UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAMUEL LOVE,<br><br>        Plaintiff,<br><br>    v.<br><br>iCUSTOM CLOTHING LLC,<br><br>        Defendant. | Case No. 20-CV-02093-LHK<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Samuel Love ("Plaintiff") filed this action for violation of the Americans with Disabilities Act ("ADA") and California Unruh Civil Rights Act ("UCRA"). ECF No. 1 ("Compl."). Before the Court is Plaintiff's motion for default judgment against Defendant iCustom Clothing LLC ("Defendant"). ECF No. 13-1.[1] Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion for default judgment.

**I.    BACKGROUND**

    **A. Factual Background**

---

[1] Plaintiff's motion for default judgment contains a notice of motion that is contained in a separate document from the points and authorities in support of the motion. ECF No. 13, at 1. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

1
Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1    Plaintiff, a resident of California, is a paraplegic and uses a wheelchair for mobility.
2 Compl. at ¶ 1.
3    Defendant, a California limited liability company, owns iCustom, a clothing business that
4 is located in San Jose, California. *Id.* at ¶ 2–3.
5    Plaintiff's complaint states only that Plaintiff visited iCustom in January of 2020, but does
6 not provide a specific date. *Id*. at ¶ 8.  Plaintiff only provided a specific date for his visit to
7 iCustom in a declaration in support of the motion for default judgment. *See* ECF No. 13-4, at ¶ 3
8 ("Love Decl."). In his declaration, Plaintiff alleges that he visited iCustom on January 9, 2020. *Id*.
9 Plaintiff alleges that iCustom is "a facility open to the public, a place of public accommodation,
10 and business establishments [sic]." Compl. at ¶ 9.
11    Plaintiff alleges that when he visited iCustom, it "failed to provide wheelchair accessible
12 sales counters in conformance with the ADA Standards." *Id.* at ¶ 10.  Specifically, the sales
13 counter was 41 inches in height, whereas the ADA requires an accessible counter to be 36 inches
14 or lower in height. *Id*; ECF No. 13-5, at 1 ("Wegman Decl.").  Plaintiff alleges that he personally
15 encountered this barrier, and that "[b]y failing to provide accessible facilities, the defendants [sic]
16 denied the plaintiff full and equal access." *Id.* at ¶ 13.
17    Plaintiff further states that an investigator working for Plaintiff's counsel was sent to
18 investigate Plaintiff's claim that iCustom lacked a wheelchair accessible sales counter.  Mot. at 1.
19 The investigator visited iCustom on February 11, 2020 and confirmed that "defendant failed to
20 provide wheelchair accessible sales counter in conformance with the ADA standards." *Id.*
21 **B. Procedural History**
22    On March 26, 2020, Plaintiff filed the instant case against Defendant.  Compl. at 1.
23 Plaintiff brings two claims: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq*.; and (2) violation
24 of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq. Id.* at ¶¶ 19–29.
25    On May 21, 2020, Plaintiff filed a Summons Returned as to Defendant.  ECF No. 10.
26    On June 11, 2020, Plaintiff filed a motion for entry of default as to Defendant.  ECF No.
27 11.  On June 12, 2020, the Clerk of Court entered default against Defendant.  ECF No. 12.
28

United States District Court
Northern District of California

1  On March 4, 2021, Plaintiff filed the instant motion for default judgment against
2  Defendant. ECF No. 13-1 ("Mot.").

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.  DISCUSSION

### A.  Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject

3

Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

matter and the parties.  A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).  In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine whether jurisdiction over the instant case exists.

The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction.  For the Court to exercise personal jurisdiction over a defendant, the defendant must also have been served in accordance with Federal Rule of Civil Procedure 4.  Accordingly, the Court then turns to service of process.

### 1. Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law.  Specifically, Plaintiff brings a claim for violation of the ADA, 42 U.S.C. § 12101, *et seq.*  Compl. at ¶¶ 19–25.  The Court has subject matter jurisdiction over Plaintiff's ADA claim.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Plaintiff also brings a related state law claim for violation of the California UCRA, Cal. Civ. Code § 51 *et seq.*  Compl. at ¶¶ 26–29.  Because Plaintiff's state law claim stems from the same underlying event as Plaintiff's federal claim—Defendant's ownership of a business that allegedly does not permit access by people with disabilities such as Plaintiff—the Court has supplemental jurisdiction over Plaintiff's state law claim.  *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006) ("[F]ederal-question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state-law claims that may be viewed as part of the same case because they 'derive from a common nucleus of operative fact' as the federal claim.") (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *DiscoverOrg Data, LLC v. Bitnine Global, Inc*, 2020 WL 6562333, at *3

4
Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1  (N.D. Cal. Nov. 9, 2020) (concluding that the Court had subject matter jurisdiction where Plaintiff

2  asserted federal claims and state law claims that stemmed from the same underlying event as the

3  federal claims). Accordingly, the Court has subject matter jurisdiction over both of Plaintiff's

4  claims. The Court next considers whether it has personal jurisdiction.

### 2. Personal Jurisdiction

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process merge into one. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *See Ziegler*

*v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). In the instant case, the Court concludes that the exercise of general jurisdiction over Defendant is appropriate.

General jurisdiction exists when a defendant is physically present in the forum state or when a defendant's activities in the forum state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted).

Here, Plaintiff alleges that Defendant is a California limited liability company. Mot. at 4; ECF No. 13-7, at 4 (records from California Business Records search). Under federal due process, a defendant that is domiciled within a state is subject to that state's general jurisdiction. *Milliken v. Meyer*, 311 U.S. 457, 462 (1940); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) ("The paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business."). Accordingly, the Court finds that it has general personal jurisdiction over Defendant.

### 3. Service of Process

Finally, in order for the Court to properly exercise personal jurisdiction over Defendant, Defendant must have been served in accordance with Federal Rules of Civil Procedure 4. *See Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote omitted)); *see also Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, 2012 WL 6711557, at *3 (N.D. Cal. Dec. 20, 2012) ("[W]here entry of default judgment is requested, the Court must determine whether service of process was adequate.").

Service of a complaint in federal court is governed by Federal Rule of Civil Procedure 4 ("Rule 4"). Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). "Sections 415.10 and 415.20(a) of the California Code of Civil Procedure provide for service on a corporation through personal service on its registered agent or on a person apparently in charge at the agent's address." *Automotive Industries*

*Pension Trust Fund v. L.A. Smith & Sons, Inc.*, 2021 WL 2638050, at *3 (N.D. Cal. May 21, 2021).

Plaintiff argues that service was effectuated on Defendant via personal service. Mot. at 4. Plaintiff's proof of service filing indicates that service was made via personal service on Mohannad Ibrahim, Defendant's agent for service of process. ECF No. 10, at 1 (proof of service); ECF No. 13-7, at 3 (record stating that Mohannad Ibrahim is Defendant's registered agent). As such, the Court finds that service was proper. *Id.*

Accordingly, the Court finds that it has both subject matter and personal jurisdiction in the instant case.

### B. Whether Default Judgment is Proper

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction over Defendant is proper, the Court now turns to the *Eitel* factors to determine whether entry of default judgment against Defendant is warranted.

#### 1. First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to Plaintiff if default judgment is not entered against Defendant. "A plaintiff who is denied a default judgment and is subsequently left without any other recourse for recovery has a basis for establishing prejudice." *Michael Grecco Prods., Inc. v. Enthusiast Gaming, Inc*, 2020 WL 7227199, at *6 (N.D. Cal. Dec. 8, 2020) (quoting *DiscoverOrg*, 2020 WL 6562333, at *5). Here, Plaintiff has established that Plaintiff will be prejudiced because Defendant has not participated in this litigation and Plaintiff would be without recourse to recover for the damages caused by Defendant if default judgment is not granted. Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

#### 2. Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims as pleaded in Plaintiff's complaint. Courts often analyze these two factors together. *See Dr. JKL*

*Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together."). In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pled allegations regarding liability in Plaintiff's complaint. *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true."). The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the complaint together.

In the instant case, Plaintiff brings two claims against Defendant: (1) violation of the ADA, 42 U.S.C. § 12101, *et seq*.; and (2) violation of the Unruh Civil Rights Act ("UCRA"), Cal. Civ. Code § 51 *et seq.* Compl. at ¶¶ 19–29. The Court first addresses Plaintiff's ADA claim and then addresses Plaintiff's UCRA claim.

Title III of the ADA prohibits discrimination on the basis of disability within places of public accommodation: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In order to state a claim under Title III of the ADA, Plaintiff must allege that: (1) he is disabled within the meaning of the ADA; (2) Defendant owns, leases, or operates a place of public accommodation; and (3) Plaintiff was denied public accommodation by Defendant because of Plaintiff's disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Additionally, "[t]o succeed on an ADA claim based on architectural barriers, [Plaintiff] 'must also prove that: (1) the existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of the barrier is readily achievable." *Johnson v. Shahkarami*, 2021 WL 1530940, at *4 (N.D. Cal. Apr. 19, 2021) (quoting *Ridola v. Chao*, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018)).

In the instant case, Plaintiff alleges the necessary facts to establish his claim under the ADA. First, Plaintiff alleges that he is disabled within the meaning of the ADA. Specifically, Plaintiff alleges that he is a paraplegic and uses a wheelchair for mobility. Compl. at ¶ 1.

Second, Plaintiff alleges that Defendant is the owner of iCustom, and that iCustom is "a facility open to the public, a place of public accommodation, and business establishments [sic]." *Id.* at ¶ 9.

Third, Plaintiff alleges that iCustom contains an architectural barrier prohibited under the ADA. Specifically, Plaintiff alleges that iCustom has failed to provide a wheelchair accessible sales counter. *Id.* at ¶ 10. The sales counter at iCustom was 41 inches in height, whereas ADA 2010 Standard § 904.4 requires an accessible sales counter to be 36 inches in height or lower. Mot. at 1, 8. Plaintiff alleges that he personally encountered this barrier, and that "[b]y failing to provide accessible facilities, the defendants [sic] denied the plaintiff full and equal access." Compl. at ¶ 13. Plaintiff alleges that this barrier is easily removeable because Defendant can provide a wheelchair accessible sales counter. Mot. at 9, Accordingly, the Court concludes that Plaintiff has adequately stated an ADA claim.

As to Plaintiff's UCRA claim, the UCRA provides that a violation of the ADA is a violation of the UCRA. *See* Cal. Civ. Code, § 51(f). In the instant case, Plaintiff's UCRA claim "arises from the same nucleus of operative facts as the ADA claim." *Johnson v. Medvill 1, LLC*, 2020 WL 7696056, at *7 (N.D. Cal. Dec. 28, 2020). Because the Court concludes that Plaintiff has adequately stated an ADA claim, the Court also concludes that Plaintiff has adequately stated a UCRA claim.

Because the Court concludes that Plaintiff has adequately stated an ADA claim and a UCRA claim, the second and third *Eitel* factors weigh in favor of granting default judgment as to both of Plaintiff's claims.

### 3. Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at

\*12 (N.D. Cal. May 29, 2007).

Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.* However, courts have found that this factor "presents no barrier to default judgment" as long as the potential damages were "proportional to the harm alleged." *See Liu Hongwei v. Velocity V Ltd. Partnership*, 2018 WL 3414053, at \*8 (C.D. Cal. July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Roof Guard Roofing Co.*, 2017 WL 6994215, at \*3 (N.D. Cal. Dec. 14, 2017) (holding that a request of over $1,000,000 was reasonable because the tax debt was substantiated with proof provided by the government).

Here, Plaintiff seeks to recover $4,000.00 in statutory damages and $4,690.00 in attorneys' fees and costs. For the reasons explained below, *infra* Section III(C)(1)-(3), the Court concludes that an award of $4,000.00 in statutory damages and $3,675.00 in attorneys' fees and costs is reasonable and proportional to the ADA and UCRA violations alleged herein. The Court notes that, under the UCRA, Plaintiff is entitled to statutory damages of $4,000.00 for each time he was discriminated against. Cal. Civ. Code § 52(a). Plaintiff alleges that he went to iCustom and experienced its barriers on one occasion, which entitles Plaintiff to $4,000.00. Compl. at ¶ 13. Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

### 4. Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the case. Where a defendant fails to appear in an action, a court can infer "the absence of the possibility of a dispute concerning material facts." *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, 2014 WL 7205114, at \*3 (N.D. Cal. Dec. 17, 2014). Defendant has failed to make an appearance in this case. The Court therefore takes the allegations in the complaint as true and holds that there is no dispute over material facts. *Fair Hous. of Marin*, 285 F.3d at 906 ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). Furthermore, the evidence

provided by Plaintiff establishes that iCustom contains a structural barrier under the ADA, which prevents equal access by people with disabilities. Compl. ¶¶ 9–10 (Plaintiff's allegations based on one visit to iCustom and the findings of Plaintiff's counsel's investigator).

The sixth *Eitel* factor considers whether failure to appear was the result of excusable neglect. Plaintiff served Defendant via personal service on Defendant's registered agent for service of process. *See* Section III(A)(3), *supra* (explaining why service was proper); ECF No. 11 (proof of service). Nonetheless, Defendant has not made an appearance in this case nor challenged the entry of default. Based on this record, nothing before the Court suggests that Defendant's failure to appear or litigate this case was the result of excusable neglect. Defendant therefore has no excusable reason to fail to appear in the instant case.

### 5. Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

Although the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts regularly hold that this policy against default judgment, standing alone, is not dispositive, especially where a defendant fails to appear or defend himself. *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014). Defendant was properly served and has not made an appearance nor challenged the entry of default. Thus, the likelihood of the case proceeding to a resolution on the merits is low. Accordingly, the Court finds that this factor weighs slightly against default judgment.

### 6. Balancing of *Eitel* Factors

In sum, the following six *Eitel* factors weigh in favor of default judgment as to Plaintiff's ADA and UCRA claims: (1) the possibility of prejudice, (2) the merits of Plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, and (6) excusable neglect. *See Eitel*, 782 F.2d at 1471–72. The final factor, the policy favoring decisions on the merits, weighs slightly against default judgment. The Court concludes that the last *Eitel* factor is outweighed by the other six factors that favor default judgment. *See, e.g.*, *Michael Grecco Prods., Inc.*, 2020 WL 7227199, at

1 *6 (concluding that the last *Eitel* factor, which weighed slightly against default judgment, was

2 outweighed by the first six *Eitel* factors, which weighed in favor of default judgment);

3 *DiscoverOrg*, 2020 WL 6562333, at *8 (same). Thus, the Court concludes that default judgment

4 is appropriate in the instant case.

### C. Damages

A plaintiff who seeks default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment order. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

In the instant case, Plaintiff seeks the following relief: (1) statutory damages; (2) injunctive relief; and (3) attorneys' fees and costs. The Court addresses each form of relief in turn.

### 1. Statutory Damages

Under the UCRA, a defendant that discriminates against a plaintiff is liable for one of two types of damages. The Court can either award actual damages in a sum of up to three times actual damages, or statutory damages, which can be no less than $4,000 for each time the plaintiff was discriminated against. Cal. Civ. Code § 52(a). In order to be awarded damages, the plaintiff must demonstrate that plaintiff had knowledge of the barrier at issue, and that plaintiff experienced difficulty, discomfort, or embarrassment when visiting defendant's establishment. Cal. Civ. Code § 55.56.

In the instant case, Plaintiff seeks statutory damages of $4,000. Mot. at 12. As explained above, *supra* Section III(B)(2), Plaintiff has stated a UCRA claim and has adequately alleged that Plaintiff had knowledge of the barrier at issue and experienced difficultly and discomfort as a result of the barrier during Plaintiff's visits to iCustom. Compl. at ¶¶ 10–15. Accordingly, the Court grants Plaintiff's request for $4,000 in statutory damages.

### 2. Injunctive Relief

Plaintiff also seeks an injunction under the ADA with respect to the barrier alleged in the complaint. Mot. at 11. Specifically, Plaintiff seeks an order requiring Defendant to provide a wheelchair accessible sales counter. *Id.* The Court considers Plaintiff's requested relief below.

Where a property does not comply with the requirements of Title III of the ADA, a plaintiff is entitled to an "order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188. In the instant case, as explained above, Plaintiff has adequately alleged iCustom does not comply with the ADA because iCustom has an architectural barrier that Plaintiff experienced on his visit. Compl. at ¶¶ 11–15. Specifically, as Plaintiff alleges in the complaint and motion for default judgment, and as Plaintiff's investigator noted in the inspection, iCustom lacks a wheelchair accessible sales counter that is 36 inches or lower in height, which violates ADA 2010 Standards §§ 904.4 and 904.4.1. Mot. at 8; Wegman Decl. at ¶¶ 2–5. Because the Court concludes that Plaintiff has adequately alleged that iCustom has an architectural barrier that violates the ADA, Plaintiff is entitled to an injunction to remedy that architectural barrier. 42 U.S.C. § 12188.

In sum, the Court concludes that Plaintiff is entitled to an injunction ordering Defendant to provide a sales counter at iCustom that is 36 inches or lower in height in compliance with ADA 2010 Standards §§ 904.4 and 904.4.1.

### 3. Attorney's Fees and Costs

The ADA permits a prevailing plaintiff to recover reasonable attorney's fees, litigation expenses, and costs. *See* 42 U.S.C. § 12205. To calculate an award of reasonable attorney's fees, courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In calculating the number of hours reasonably expended on the litigation, the Court excludes hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. In determining the hourly rate, the Court must "consider[] the experience, skill and reputation of the attorney requesting fees." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373

(9th Cir. 1987).

In the instant case, Plaintiff requests $4,690.00 in attorneys' fees and costs, including: (1) $780.00 in attorney's fees for attorney Mark Potter; (2) $1,430.00 in attorney's fees for attorney Russell Handy; (3) $500 in attorney's fees for attorney Amanda Seabock; (4) $1,080 in attorney's fees for attorney Faythe Gutierrez; and (5) $880.00 in other litigation costs. Mot. at 12;[2] ECF No. 13-3, at 8 ("Handy Decl."). Below, the Court addresses in turn (1) Plaintiff's counsel's hourly rate; (2) the number of hours reasonably expended by Plaintiff's counsel; and (3) litigation costs.

### a. Plaintiff's Counsel's Hourly Rate

The first step in the calculation of a lodestar figure is to determine the reasonable hourly rate to be applied. For the purposes of determining the proper hourly rate, the relevant community is the forum in which the Court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

When a party seeking fees submits declarations, courts must consider those declarations and cannot substitute that analysis by only considering previous fee awards. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("The district court diverged from the applicable standard in discarding the declarations entirely and considering only the previous fee awards in determining the prevailing market rate.").

However, the Ninth Circuit has made clear that "[a] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (quotation marks omitted). Thus, the purpose of granting fees is both "to attract qualified counsel to civil rights cases and [to]

---

[2] Plaintiff's motion for default judgment states that Plaintiff requests $4,690 in attorneys' fees. Mot. at 12. However, based on the Handy Declaration, it is clear that Plaintiff seeks $3,790 in attorneys' fees and $900 in litigation costs for a total of $4,690. ECF No. 13-3, at 7–9.

14
Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

avoid[ ] a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.* (quotation marks, citations, and internal alterations omitted).

Here, Plaintiff's counsel seeks a rate of $650 per hour for attorneys Mark Potter and Russell Handy; a rate of $500 per hour for attorney Amanda Seabock; and a rate of $400 per hour for attorney Faythe Gutierrez. Handy Decl. at ¶¶ 3–6.

Plaintiff has submitted the declaration of John O'Connor to justify these requested hourly rates. ECF No. 13-10 ("O'Connor Decl."). According to the O'Connor Declaration, attorneys Mark Potter and Russell Handy have between twenty-one and twenty-six years of experience. *Id.* at ¶ 30. Attorney Amanda Seabock, who is an associate, has six years of experience. *Id.* O'Connor does not discuss the experience of attorney Faythe Gutierrez, who is an associate.

Based on the experience of the attorneys at issue in the instant case, O'Connor "opine[d]" that in this district "the most appropriate rate for partners' ADA services range from $450 to $750 per hour, despite recent awards as low as $400 to $425." *Id.* at ¶ 27. O'Connor further "opine[d] that "for associates' services," the "most appropriate range" in this district is "from $300 to $550 per hour, notwithstanding exceptional awards as low as $250." *Id.* O'Connor declared that his opinion was based on "recent rates awarded in the Northern District, and disability rates in the Bay Area in general," which he has "kept abreast of . . . since at least 2000." *Id.* at ¶ 29. As a result, Plaintiff's counsel seeks rates of $650 per hour for attorneys Mark Potter and Russell Handy; $500 per hour for attorney Amanda Seabock; and $400 per hour for attorney Faythe Gutierrez. *See* Handy Decl. at ¶¶ 3–6.

However, the O'Connor Declaration alone does not justify the rates that Plaintiff seeks in the instant case. The rates that Plaintiff seeks are all on the high end of O'Connor's claimed reasonable rates, and Plaintiff's counsel does not adequately justify the specific rates requested in this case. Moreover, in ADA cases, courts typically award analogous rates for attorneys with far more experience than Plaintiff's counsel. *See, e.g., Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1268 (N.D. Cal. 2014) (awarding fees at $645 per hour for an attorney who was a "member

15

of the California bar for over forty-five years" and because "defendants d[id] not contest that $645/hour [was] a reasonable rate"); *Martin v. Diva Hosp. Grp., Inc.*, 2018 WL 6710705, at *2 (N.D. Cal. Dec. 7, 2018) (awarding fees of $700 per hour for attorneys with almost thirty years of experience and awarding fees of $795 per hour for an attorney with almost fifty years of experience—rates that the defendants did not contest as unreasonable). Moreover, courts have noted "that a rate over $700/hour is the exception, and not the norm, for disability cases." *Johnson v. Rocklin of Cal. LLC*, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019) (citing *Chapman v. NJ Properties, Inc.*, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019)). Rather, "[f]or attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases." *Id.* (collecting cases).

The Court acknowledges that Plaintiff's counsel has obtained a fee award consistent with the rates requested in the instant case in *Love v. Rivendell II, Ltd., et al.*, Case No. 18-cv-03907-JST (EDL), ECF No. 25 (N.D. Cal. Mar. 11, 2019) (report and recommendation granting hourly rate of $650 for attorneys Potter and Handy); *see id.*, ECF No. 30 (adopting report and recommendation). However, as multiple courts in this district have subsequently noted, "that lone order granting an unopposed motion does not accurately reflect the prevailing rate in the community for work similar to this action," as "that order cited cases that concerned work substantially different from the work performed in this action." *Johnson v. AutoZone, Inc.*, 2019 WL 2288111, at *6 n.4 (N.D. Cal. May 29, 2019); *see also Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (drawing same distinction); *John v. Cala Stevens Creek/Monroe, LLC*, 2020 WL 2556989, at *5 (N.D. Cal. May 20, 2020) (same). Specifically, the cases that *Rivendell* relied upon involved "a complex class action matter involving 54 hotels spread among multiple states" and set "'new precedent' that caused the California State Bar to 'change a policy which impacts potentially hundreds of individuals each year across California.'" *Rocklin of Cal. LLC*, 2019 WL 3854308, at *9 (distinguishing the fee award in *Rivendell*).

By contrast, the instant case was a straightforward ADA case involving a single clothing store that presents no significant legal issues of first impression. When a case "is a relatively

16

simple one, involving straight-forward application of the law, and which does not present novel or difficult issues requiring a high level of skill or specialization," courts have found that higher rates are generally unwarranted. *See Johnson v. Oakwood Ctr. LLC*, 2019 WL 7209040, at *13 (N.D. Cal. Dec. 27, 2019).

Moreover, as Plaintiff's own expert explained, the floor for reasonable ADA rates in this district is $450 per hour for partners and $300 per hour for associates. O'Connor Decl. at ¶¶ 27, 33. Recent decisions from this district confirm that rates similar to these are reasonable. *See, e.g., Johnson v. Chao*, 2021 WL 1430799, at *9 (N.D. Cal. Feb. 2, 2021) (granting rates of $475 to attorneys Potter and Handy; $350 to attorney Seabock; and $300 to attorney Gutierrez); *Johnson v. Baglietto*, 2020 WL 3065939, at *12 (N.D. Cal. May 21, 2020) (granting rates of $475 for attorneys Potter and Handy, and $350 for attorney Seabock); *Cala Stevens Creek/Monroe, LLC*, 2020 WL 2556989, at *7 (granting rates of $475 for attorneys Potter and Handy, and $350 for attorney Seabock); *Rocklin of Cal. LLC*, 2019 WL 3854308, at *12 (granting rates of $475 per hour for attorneys Potter and Handy and $350 per hour for attorney Seabock); and *Oakwood Ctr. LLC*, 2019 WL 7209040, at *13 (granting rates of $475 for attorneys Potter and Handy, and $350 for attorney Seabock).

Finally, these rates are reasonable for this district because, as the Ninth Circuit has explained, "[a] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Vogel*, 893 F.3d at 1158 (quotation marks omitted). As this Court previously noted, Plaintiff's counsel as of November 2019 had filed over one thousand ADA cases in this district and approximately four thousand ADA cases in the Central District and Eastern District of California, and there is no evidence that rates of approximately $475 per hour for partners and approximately $300 to $350 per hour for associates are insufficient to induce capable attorneys to undertake ADA litigation in this district. *See Cala Stevens/Monroe, LLC*, 2020 WL 2556989, at *6 (explaining Plaintiff's counsel's volume of ADA cases in this circuit); *Johnson v. Maple Tree Investors et al.*, No. 17-cv-06762-LHK, ECF No. 62 at 17, 34-36 (N.D. Cal. Dec. 4, 2019) (transcript of November 7, 2019 hearing where attorney

17
Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

from Plaintiff's counsel's firm represented that his law firm has simultaneously "over a thousand" ADA cases in this district and approximately 1,500 ADA cases in the Central District of California and has litigated approximately 2,500 ADA cases in the Eastern District of California). Moreover, the Ninth Circuit has noted that "district court[s] must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Vogel*, 893 F.3d at 1158 (quotation marks, citations, and internal alterations omitted). The Court finds that awarding the fees requested by Plaintiff's counsel would be a prohibited windfall in the instant case. *See id.*

Accordingly, in light of Plaintiff's declarations and evidence, case law from this district concerning reasonable attorney's fees, and binding Ninth Circuit precedent, the Court determines that the following hourly rates are reasonable for the instant case: $475 per hour for attorneys Mark Potter and Russell Handy; $350 per hour for attorney Amanda Seabock; and $300 per hour for attorney Faythe Gutierrez.

b. **Plaintiff's Counsel's Number of Hours**

Plaintiff requests a total of 7.1 hours for work on the instant case. Handy Decl. at 9. These hours include 1.20 hours for attorney Mark Potter (case assessment, instructions to investigator, analysis of claims, review of images); 2.2 hours for attorney Russell Handy (review of investigator report, public records search, complaint drafting); 1.00 hour for attorney Amanda Seabock (draft request for entry of default and supporting declaration); and 2.7 hours for attorney Faythe Gutierrez (draft motion for default judgment and finalize declaration for plaintiff). *Id.* at 8–9. Having reviewed Plaintiff's counsel's declaration and supporting documentation, the Court concludes that these hours were expended reasonably.

Accordingly, the Court calculates Plaintiff's counsel's lodestar as follows. 1.20 hours for Mark Potter at $475 per hours for a total of $570.00. 2.2 hours for attorney Russell Handy at $475 per hour for a total of $1,045.00. 1.00 hour for attorney Amanda Seabock at $350 per hour for a total of $350.00. Finally, 2.7 hours for attorney Faythe Gutierrez at $300 per hour for a total of $810.00. In sum, the Court concludes that Plaintiff is entitled to $2,775.00 in attorneys' fees in

1  the instant case.

### c. Litigation Costs

Plaintiff also requests $900.00 in other litigation costs. Plaintiff has submitted documentation showing that he expended a total of $900.00 in litigation costs in the instant case, including a $400.00 filing fee, $100 on service of documents, and $400.00 on investigative costs. ECF No. 13-3, at 7. The Court concludes that these litigation costs are reasonable. *See Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1295 (N.D. Cal. 2014) (awarding costs for an investigator to perform site surveillance in an ADA case); *Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *10 (N.D. Cal. 2013) (awarding costs for filing and service of process fees). Accordingly, the Court grants Plaintiff $900.00 in litigation costs.

Thus, the Court grants in part and denies in part Plaintiff's request for attorneys' fees and costs. In total, the Court grants Plaintiff $2,775.00 in attorneys' fees and $900.00 in other litigation costs for a total award of $3,675.00 in attorneys' fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment against Defendant for violation of the ADA and UCRA. The Court awards Plaintiff $4,000 in statutory damages and $3,675.00 in attorneys' fees and costs. The Court enters an injunction ordering Defendant to provide a wheelchair accessible sales counter at iCustom that is 36 inches or lower in height, in conformance with ADA 2010 Standards §§ 904.4 and 904.4.1.

**IT IS SO ORDERED.**

Dated: August 2, 2021

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

19
Case No. 20-CV-02093-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT